USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
JOHN ASSADI,

                Plaintiff,

   - against -

                         12 Civ. 1111 (LLS)

                        OPINION & ORDER

UNITED STATES DEPARTMENT OF STATE,

                Defendant.
- - - - - - - - - - - - - - - - - - - -X

    Plaintiff John Assadi brings this Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552, suit to obtain records from

Defendant the United States Department of State ("DOS").

    DOS moves for partial summary judgment, arguing that it has

satisfied its obligations under FOIA because its search through

February 2014 was adequate and any withheld documents fall

within FOIA exemptions.  Assadi contends that DOS's search was

inadequate, DOS erroneously withheld documents under FOIA

Exemptions 3 and 5, and DOS did not reasonably segregate the the

non-exempt portions.  He also requests in camera review of all

disputed documents.

    The motion for partial summary judgment is granted because

DOS conducted an adequate search, provided sufficiently detailed

affidavits and Vaughn indices[1] that show it properly invoked

_____

[1] "A Vaughn index is an itemized listing of the non-disclosed
records, describing each record and portion withheld, and
providing a detailed justification for the agency's withholding,

- 1 -

applicable FOIA exemptions, and released all reasonably

segregable non-exempt portions of the documents.

**BACKGROUND**

On November 29, 2011, Assadi, a partner in the law firm of

Assadi & Milstein LLP, Compl. ¶ 4, submitted a FOIA request to

DOS's Office of Information Programs and Services ("IPS").[2]   Id.

Ex. C at 1.

> Assadi requested that IPS
>
> search the records of the U.S. Department of State,
> including the National Visa Center, Fraud Prevention Unit,
> the American Embassies/Consulates in Ankara, Istanbul and
> Adana, Turkey, the American Embassy in Paris, France and
> the American Embassy in Abu Dhabi, United Arab Emirates,
> and provide any and all documents, including operational
> and administrative policies, intra-agency and inter-agency
> memoranda, letters, cables, emails, personal correspondence
> or other communications relating to John Assadi, John J.
> Assadi or Assadi & Milstein LLP.

Id.

> Assadi explained:
>
> The circumstance that led to the creation of such records
> and the basis for my belief that such records exist within
> the Department of State and its offices relate to an
> unclassified memorandum issued by the State Department NVC
> Fraud Prevention Unit on February 19, 2010 to the American
> Embassy/Consulate, in Ankara, Turkey, among others, and
> subsequent anomalous treatment by State Department entities

---

specifying the FOIA exemption that it has applied."   Nat'l Day
Laborer Org. Network v. U.S. Immigration & Customs Enforcement
Agency, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011) (footnote
omitted).
[2] Assadi had previously submitted a FOIA request to DOS on
October 11, 2011, Compl. Ex. A, but DOS denied this request
because Assadi did not provide proof of his identity.   Id. Ex. B
at 1.

of visa applications for applicants represented by John
Assadi or Assadi & Milstein LLP.

Id.

Assadi filed the Complaint on February 14, 2012, alleging
that DOS "failed to produce any records responsive to
Plaintiff's November 29, 2011 FOIA request or demonstrate that
responsive records are exempt from production, nor has Defendant
indicated when or whether any responsive records will be
produced."  Id. ¶ 10.  He asked that the Court "Order Defendant
to produce, by a date certain, any and all non-exempt records
responsive to Plaintiff's November 29, 2011 FOIA request and a
Vaughn index of any responsive records withheld under claim of
exemption."  Id. at 4.

Pursuant to consultations between the parties and
conferences held by the Court on May 11, 2012, August 17, 2012,
September 14, 2012, and November 15, 2013, see Dkt., the parties
agreed to a two-phase search and rolling productions of
responsive records.

The first search phase produced records from the Central
Foreign Policy Records, the Bureau of Consular Affairs, the U.S.
Embassies in Ankara, Turkey, Paris, France, and Abu Dhabi,
United Arab Emirates, see Walter Decl. ¶¶ 9-14, and the second
search phase produced records from the National Visa Center.
See id. ¶¶ 15-19.  DOS produced a Vaughn index to Assadi for the

first phase in September 2012 and for the second phase in March 2014 with this motion.

DOS has since undertaken a third search phase of the Office of the Legal Adviser and the Office of Legal Affairs in the Office of Visa Services within the Bureau of Consular Affairs, which is not at issue on this motion.  Id. ¶ 23.

## DISCUSSION

DOS moves for partial summary judgment, arguing that it has met its FOIA obligations for the first two search phases.

Assadi argues that DOS failed to conduct an adequate search, improperly withheld documents under FOIA Exemptions 3 and 5 and did not release all reasonably segregable factual material.  Assadi also requests that the Court conduct an in camera review of all disputed documents.

### A. FOIA Summary Judgment Standards

FOIA requests are generally resolved on summary judgment:

In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA.  See 5 U.S.C. § 552(a)(4)(B); EPA v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973).  Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden.  See Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993); Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam); Malizia v. United States Dep't of Justice, 519 F. Supp. 338, 342 (S.D.N.Y. 1981).  Affidavits submitted by an agency are "accorded a presumption of good faith," Safecard

Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991);
accordingly, discovery relating to the agency's search and
the exemptions it claims for withholding records generally
is unnecessary if the agency's submissions are adequate on
their face.  When this is the case, the district court may
"forgo discovery and award summary judgment on the basis of
affidavits." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir.
1978), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63
L.Ed.2d 759 (1980); accord Maynard, 986 F.2d at 556 n. 8;
Simmons v. United States Dep't of Justice, 796 F.2d 709,
711-12 (4th Cir. 1986).

In order to justify discovery once the agency has satisfied
its burden, the plaintiff must make a showing of bad faith
on the part of the agency sufficient to impugn the agency's
affidavits or declarations, Goland, 607 F.2d at 355, or
provide some tangible evidence that an exemption claimed by
the agency should not apply or summary judgment is
otherwise inappropriate, see, e.g., Washington Post Co. v.
United States Dep't of State, 840 F.2d 26, 28 (D.C. Cir.
1988) (non-moving party produced hard evidence in the form
of books and press accounts suggesting privacy exemption
did not apply, vacated on other grounds, 898 F.2d 793
(1990); Porter v. United States Dep't of Justice, 717 F.2d
787, 791-93 (3d Cir. 1983) (agency's affidavits included
conflicting information); Schaffer v. Kissinger, 505 F.2d
389, 390-91 (D.C. Cir. 1974) (per curiam) (inadequate
reasons stated for application of national security
exemption).

Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812-13 (2d Cir.

1994) (footnote omitted).

In addition to affidavits or declarations, agencies often

submit Vaughn indices to meet their burden.  Nat'l Day Laborer

Org. Network, 811 F. Supp. 2d at 733.  "The Vaughn index must

adequately describe each withheld document or portion of a

document and must state the claimed exemption with sufficient

specificity to permit a reasoned judgment as to whether the

material is actually exempt under FOIA."  NAACP Legal Def. &

<u>Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.</u>, No. 07 Civ. 3378, 2007 WL 4233008, at *9 (S.D.N.Y. Nov. 30, 2007) (internal quotation marks and citation omitted).

## B. Adequacy of the Search

"A search will be considered adequate if it was reasonably calculated to uncover all relevant documents.  Reasonableness does not demand perfection, and a reasonable search need not uncover every document extant."  <u>Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.</u>, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009), <u>aff'd</u>, 601 F.3d 143 (2d Cir. 2010).

DOS relies on the declaration of Sheryl L. Walter, Director of IPS, to show that its search was adequate.  DOS summarizes the search as follows:

> First, the Department initiated searches of all Department components specifically requested by the Plaintiff, including several embassies and consulates.  <u>See</u> Walter Decl. ¶¶ 22, 27-34.  The Department located responsive records as a result of these searches, the details of which are described in the Walter Declaration.  <u>See</u> Walter Decl. ¶¶ 8-14, 27-34; Exh. 5-11.  Additionally, the Department searched its Central Foreign Policy Records collection (the "Central File"), which contains over 30 million records of a substantive nature.  <u>See</u> Walter Decl. ¶¶ 8, 24-26; Exh. 5.  A search of the Central File was conducted through a full-text search using the terms "John Assadi," "John J. Assadi," "Assadi, John," "Assadi Milstein" and "Assadi and Milstein."  Two responsive records were found.  <u>See</u> Walter Decl. ¶¶ 14, 35-38; Exh. 11.  Given the nature of the requested records, a Consular Affairs Analyst determined that the only locations reasonably likely to contain responsive records in the Bureau of Consular Affairs were two databases, the Consular Lookout and Support System and the Petition Information Management Services; both of these databases were searched using the term "John Assadi."

> Walter Decl. ¶¶ 35-38.  Some responsive records were
> located.  Walter Decl. ¶¶ 14, 38; Exh. 11.  Finally, the
> Fraud Prevention Unit of the National Visa Center conducted
> a search of its paper and electronic records systems using
> the terms "Assadi," "John Assadi," "John J. Assadi,"
> "Assadi and Milstein," and "Assadi or Milstein."
> Responsive records were also found through this search.
> See Walter Decl. ¶¶ 15-19, 39-41; Exh. 12-16.

Defendant's Memorandum of Law in Support of the Motion for

Partial Summary Judgment dated March 6, 2014 ("D. Mem.") 7-8.

The Walter Declaration is sufficiently detailed and shows

that DOS searched all sources specified in Assadi's request as

well as other DOS records systems likely to contain relevant

documents, and that its search methods were reasonably

calculated to uncover all responsive records.

Assadi argues that DOS's "failure to search the Office of

the Legal Adviser and the Office of Legal Affairs in the Office

of Visa Services calls into question the adequacy of Defendant's

searches from the outset of the instant FOIA process."  P. Opp.

at 5.  He contends that his FOIA request asked for documents

relating to Assadi & Milstein LLP and "Because law firms engage

in litigation frequently by their nature, Defendant should have

reasonably considered there would be responsive records within

the Office of Legal Affairs in the Office of Visa Services."

Id. at 5-6.

However, Assadi's FOIA request was stated to be based on

his belief that DOS had records relating to the February 2010

memorandum issued by the State Department NVC Fraud Prevention
Unit and subsequent anomalous treatment of visa applications for
applicants represented by Assadi & Milstein LLP.  Compl. Ex. C
at 1.  It was reasonable for DOS to interpret Assadi's request
as seeking records pertaining to the February 2010 memorandum
and the processing of visa applications involving Assadi and his
firm.  DOS later asked for clarification from Assadi about the
request's scope, and when Assadi said that his request included
litigation files in cases brought by Assadi & Milstein LLP, DOS
undertook supplemental searches of its legal offices.  Walter
Decl. ¶ 23.  The evidence shows neither bad faith on the part of
DOS sufficient to impugn the Walter Declaration, nor that the
search so far conducted was inadequate.

### C. Validity of Claimed FOIA Exemptions

FOIA provides:

(a) Each agency shall make available to the public
    information as follows:  . . .  [exhaustive provisions of
    scope and operation of the Act]

(b) This section does not apply to matters that are-

(1)(A) specifically authorized under criteria established
by an Executive order to be kept secret in the interest of
national defense or foreign policy and (B) are in fact
properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and
practices of an agency;

(3) specifically exempted from disclosure by statute (other
than section 552b of this title), provided that such statute
(A) requires that the matters be withheld from the public in

such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion

- 9 -

of the portions which are exempt under this subsection. The
amount of information deleted shall be indicated on the
released portion of the record, unless including that
indication would harm an interest protected by the exemption
in this subsection under which the deletion is made. If
technically feasible, the amount of the information deleted
shall be indicated at the place in the record where such
deletion is made.

5 U.S.C. § 552(a)-(b).

DOS has withheld documents in whole or in part on the basis
of Exemptions 3, 5, 6 and 7(E).

Assadi does not contest DOS's withholdings of documents
under Exemption 5 for attorney-client privilege and attorney
work product, portions of documents under Exemption 6, or one
document under Exemption 7. Accordingly, the Court need only
address Assadi's challenges to DOS's withholdings under
Exemption 3 and Exemption 5's "deliberative process" privilege,
recognized by courts as "a sub-species of work-product privilege
that covers documents reflecting advisory opinions,
recommendations and deliberations comprising part of a process
by which governmental decisions and policies are formulated,"
Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002)
(internal quotation marks and citation omitted), and issues of
segregation and in camera review.

### 1. Exemption 3: Statutory Exemptions

Assadi argues that Exemption 3 does not apply to the
documents withheld under it.

Exemption 3 permits withholding for matters

> specifically exempted from disclosure by statute (other
> than section 552(b) of this title), provided that such
> statute (A) requires that the matters be withheld from the
> public in such a manner as to leave no discretion on the
> issue, or (B) establishes particular criteria for
> withholding or refers to particular types of matters to be
> withheld

5 U.S.C. § 552(b)(3). "To properly withhold documents under

this exemption, the Government must establish both that the

statute invoked qualifies under Exemption 3 and that the

documents withheld qualify for nondisclosure under that

statute." Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 366

(S.D.N.Y. 2008), aff'd, 402 F. App'x 648 (2d Cir. 2010)

(citation omitted).

The Immigration and Nationality Act, 8 U.S.C. § 1202(f),

provides in part: "The records of the Department of State and of

diplomatic and consular offices of the United States pertaining

to the issuance or refusal of visas or permits to enter the

United States shall be considered confidential."

Assadi does not contest that § 1202(f) qualifies as a

withholding statute.  See, e.g., Immigration Justice Clinic of

Benjamin N. Cardozo School of Law v. U.S. Dep't of State, 12

Civ. 1874, 2012 WL 5177410, at *1 (S.D.N.Y. Oct. 18, 2012)

(citing cases holding that § 1202(f) is a withholding statute).

The documents withheld by DOS qualify for nondisclosure

under § 1202(f).  The Vaughn entries for the documents withheld

- 11 -

pursuant to Exemption 3 describe intra- or inter-agency e-mail
chains, memoranda, and visa case lists or reports.  See Walter
Decl. Ex. 1, Vaughn entries 1-35, 37-46, 48-61, 63-84.  The
entries make clear that the withheld documents relate to visa
applications or litigation involving visa adjudications, and
therefore pertain to the issuance or refusal of visas or permits
to enter the United States and are confidential under § 1202(f).
See, e.g., Vaughn entry 2 ("The withheld information contains a
discussion between Department officials regarding a specific
visa applicant, represented by John Assadi and/or Assadi &
Milstein LLP, and the next steps the Department is considering
before taking action on this particular individual's visa
application.  The discussion itself pertains directly to
issuance or refusal of a visa to enter the United States and,
therefore, is withheld under FOIA exemption b3."); Vaughn entry
3 ("This document is an e-mail chain that includes
communications between Consular Officials, DOS counsel, and DOJ
counsel pertaining to litigation in the Southern District of New
York (SDNY) involving visa adjudications.  The withheld
information contains a discussion between Department officials
regarding a specific visa applicant, represented by John Assadi
and/or Assadi & Milstein LLP, and potential next steps available
to the Department before rendering a decision on this particular
individual's visa application.  The discussion itself pertains

directly to the issuance or refusal of a visa to enter the
United States and, therefore, is withheld under FOIA exemption
b3."); Vaughn entry 4 ("This document is an e-mail chain that
includes communications between Consular Officials and DOS
counsel seeking and/or receiving legal advice regarding the
standards and processes pertaining to the adjudication of visas.
The withheld information contains a discussion between
Department officials regarding several visa applicants,
represented by John Assadi and/or Assadi & Milstein LLP, and the
next steps the Department is considering before taking action on
these particular visa applications.  The discussion itself
pertains directly to the issuance or refusal of a visa to enter
the United States and, therefore, is withheld under FOIA
exemption b3.").

Assadi contends that § 1202(f) should only be applied to
past and present visa applications, citing this Court's decision
in Immigration Justice Clinic, 2012 WL 5177410, at *3, which
held that "where there is no visa application process to
determine the issuance or refusal of a visa, the Government
cannot rely on § 1202(f) to withhold information that was
neither gathered, used, nor is being used to determine an actual
past or pending visa application."  Assadi argues that DOS "has
withheld numerous documents under FOIA exemption 3 that refer to

decisions on future visa applications that do not currently
exist."  P. Opp. at 10.

DOS has submitted the declaration of Jeffrey E. Gorsky,
Chief of the Advisory Opinion Division of the Visa Office in
DOS's Bureau of Consular Affairs, with its reply brief.  Gorsky
declares, without rebuttal:

> I further confirm that all of the information withheld
> under Exemption 3 pursuant to section 222(f) of the INA
> pertains to the issuance or refusal or actual visas that
> were sought for entry into the United States.  These
> records were generated based on the concerns noted above
> relating to visa eligibility in certain cases adjudicated
> by consular officers, and many of them were generated in
> the context of ongoing or anticipated litigation involving
> these visa petitions and Mr. Assadi.

Gorsky Decl. ¶ 8.

The withheld documents are exempt from disclosure under
Exemption 3.

### 2. Exemption 5: Deliberative Process Privilege

Assadi contends that it is unclear whether DOS has
satisfied the elements of the deliberative process privilege
because the Vaughn indices "provided overly vague descriptions
of the withheld documents and the information therein" and the
Walter Declaration "contained no specific reasoning as to how
FOIA exemption 5 applied to the withheld documents at issue."
P. Opp. at 13.

FOIA provides, "Each agency shall make available to the
public information," 5 U.S.C. § 552(a), but "This section does

- 14 -

not apply to matters" such as "inter-agency or intra-agency
memorandums or letters which would not be available by law to a
party other than an agency in litigation with the agency." Id.
§ 552(b)(5).  This deliberative process privilege protects
"recommendations, draft documents, proposals, suggestions, and
other subjective documents which reflect the personal opinions
of the writer rather than the policy of the agency." Tigue, 312
F.3d at 80 (internal quotation marks and citation omitted).

   The Second Circuit has elaborated:

   An inter- or intra-agency document may be withheld pursuant
   to the deliberative process privilege if it is: (1)
   predecisional," i.e., "prepared in order to assist an
   agency decisionmaker in arriving at his decision," and (2)
   "deliberative," i.e., "actually . . . related to the
   process by which policies are formulated."

Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356
(2d Cir. 2005), quoting Grand Cent. P'ship, Inc. v. Cuomo, 166
F.3d 473, 482 (2d Cir. 1999) (internal quotation marks and
citations omitted) (omissions in La Raza).

   Here, the documents are predecisional because they were
used to assist DOS officers in reaching final decisions on visa
applications, policy questions, and litigation cases, and
deliberative because they discuss proposed next steps or
potential outcomes of those applications, policies, or
litigations.  See, e.g., Vaughn entry 8 ("The withheld
information contains a discussion between Department officials

- 15 -

regarding a specific visa applicant, represented by John Assadi and/or Assadi & Milstein LLP, and the next steps the Department is considering before taking action on this particular visa application . . . the withheld portion is also exempt from release under FOIA exemption b5 because it is pre-decisional and deliberative with respect to the adoption of a final decision on how this visa application will be adjudicated."); Vaughn entry 29 ("This document consists of an e-mail chain among NVC staff. The discussion concerns the creation of case reports utilizing particular specified query criteria and whether such reports are different from other previously created reports, and whether they can be run regularly or must be separately requested.  The Department withheld messages under FOIA exemption b5 pursuant to the deliberative process privilege because they contain internal discussions regarding whether and how to create particular case reports, and they are pre-decisional and deliberative with respect to the adoption of a final decision on these issues."); Vaughn entry 30 ("These documents consist of e-mail messages among NVC staff, DOS attorneys, and Department of Justice ("DOJ") Assistant U.S. Attorneys ("AUSAs") from the Southern District of New York ("SDNY") with the same subject line.  These e-mail messages contain a discussion of the lawsuit, Arabnia et al. v. Dep't of State, 10 Civ. 3737 (KMW) (SDNY), and about matters raised in a related contemplated lawsuit, including a

discussion of how the U.S. Government (USG) should proceed in these matters . . . The Department also withheld these documents under FOIA exemption b5 pursuant to the deliberative process privilege because they contain discussions between and among DOS officials and their attorneys regarding proposed next steps in the case, and they are pre-decisional with respect to the final action to be taken with respect [to] certain issues in this lawsuit.").

DOS's Vaughn entries are also reasonably detailed. They describe the author, recipient, date, type and content of each document withheld in whole or in part, and explain why the document falls within an applicable exemption or exemptions. For example, Vaughn entry 10 describes the withheld document as an intra-agency e-mail chain between September 15 and 16, 2011, and states:

> This document is an e-mail chain that includes communications between Consular Officials and DOS counsel seeking and/or receiving legal advice regarding the standards and processes pertaining to the adjudication of visas. The withheld information contains a discussion between Department officials regarding several visa applicants, represented by John Assadi and/or Assadi & Milstein LLP, and the next steps the Department is considering before taking action on these particular visa applications. The discussion itself pertains directly to the issuance or refusal of a visa to enter the United States and, therefore, is withheld under FOIA exemption b3. Furthermore, material has also been withheld under FOIA exemption b5 pursuant to the attorney-client privilege and the attorney work product doctrine to protect communications between attorneys and their clients for the purpose of seeking and/or providing legal advice, as well

as work product prepared by attorneys in connection with ongoing and/or anticipated litigation involving E-11 visa petitions and Mr. Assadi.  These communications were intended to be kept confidential and that confidentiality has been maintained.  The document also contains personally identifiable information about the visa applicants, release of which would constitute a clearly unwarranted invasion of privacy, and, therefore is withheld under FOIA exemption b6.  This document has been subject to a thorough review for the purpose of releasing any non-exempt information; however, it contains no additional information that may be reasonably segregated and released.

Assadi is correct that the Walter Declaration does not explain how Exemption 5 applies to each withheld document.  But see NAACP Legal Defense and Educ. Fund, 2007 WL 4233008, at *11 ("[A]lthough OIG's Vaughn index and accompanying declaration are perhaps not as full as might be ideal, they nevertheless provides [sic] a sufficient basis for making a 'reasoned judgment' that the documents fall within the scope of the deliberative process privilege.") (citations omitted); Halpern v. F.B.I., 181 F.3d 279, 291 (2d Cir. 1999) ("[A] number of courts, including our own, have eschewed rigid adherence to any particular indexing format under the Vaughn standard, opting instead for a functional approach.").  Under that approach, DOS's Vaughn indices and the Gorsky Declaration provide an adequate basis to conclude that DOS's process assured that the withheld documents are exempt from disclosure.

### D. Segregability

Assadi argues that the Walter Declaration and Vaughn indices do not establish that DOS has disclosed all segregable non-exempt material.

FOIA requires that "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." Conti v. U.S. Dep't of Homeland Sec., 12 Civ. 5827, 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014). "The fact that there may be some nonexempt matter in documents which are predominantly exempt does not require the district court to undertake the burdensome task of analyzing approximately 300 pages of documents, line-by-line." Doherty v. U.S. Dep't of Justice, 775 F.2d 49, 53 (2d Cir. 1985) (citations omitted).

Walter declares, "After conducting a line-by-line review, the Department determined that no further segregation can be made without disclosing exempt information." Walter Decl. ¶ 61. The Vaughn entries also state that DOS conducted segregability analysis for each document. See Vaughn entries 1-84.

DOS has withheld 81 of the 83 disputed documents pursuant to Exemption 3.[3]  Exemption 3 provides for withholding if the matter is "specifically exempted from disclosure" by a statute that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3)(A).  Section 1202(f) requires that records pertaining to the issuance of visas remain confidential, and DOS has established that the documents withheld under Exemption 3 are restricted from disclosure under § 1202(f).

Assadi contends that DOS's redaction of Vaughn entry 35, a cable titled "Abuse Suspected in Ankara IV E-1 Cases" which alerted DOS's Consular Affairs Offices about fraud concerns in connection with specific visa applications, shows DOS's faulty segregability analysis.  P. Opp. at 14.  Assadi argues, "The fourth paragraph of the unredacted cable does not fall under the claimed FOIA exemption 3, and is easily segregable from the remained of the document, even assuming arguendo that the rest of the document is covered by any claimed FOIA exemption."  P. Opp. at 14 (emphasis in original).  However, examination of the document shows that the short (final) fourth paragraph of Entry 35 is a conclusion, recommending action based on the specific

---

[3] Although the Vaughn indices contain eighty-four entries, because Vaughn entry 62 was withheld in error, only eighty-three documents are disputed.

visa submissions set forth in the cable from which the
recommendation draws its meaning; it is not separable from its
foundation in the document.

The only disputed documents not withheld under Exemption 3
– Vaughn entries 36 and 47 – were both withheld in full under
Exemption 5's deliberative process privilege.  Entry 36
describes e-mail chains among NVC staff discussing "reconciling
the number of cases in the NVC's Fraud Prevention Unit ("FPU")
with the number produced by unit reports," while entry 47
describes an e-mail chain among NVC staff discussing "whether
and how to include an item in the NVC's periodic Fraud Digest to
inform posts of concern about certain visa cases."  No
reasonably segregable material appears to be in those two
documents.

DOS has shown that it is entitled to the presumption that
all reasonably segregable non-exempt material has been
disclosed.

### E. In Camera Review

Finally, Assadi asks the Court to conduct an in camera
review of the disputed documents, contending that the number of
documents to be disputed is relatively small and repeating his
arguments that the Walter Declaration did not adequately
describe the withheld documents' contents or the bases for the

claimed exemptions and DOS's failure to search its legal offices demonstrates bad faith. P. Opp. at 7-8.

"Only if the government's affidavits make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions is in camera review necessary." Associated Press v. U.S. Dep't of Justice, 549 F.3d 62, 67 (2d Cir. 2008) (citations omitted). "Ultimately, the decision is entrusted to the district court's discretion." Id. (citation omitted).

As previously discussed, the Walter Declaration and Vaughn indices submitted by DOS are sufficiently specific and DOS's request for clarification of Assadi's FOIA request does not indicate bad faith. Because Assadi has not effectively challenged DOS's assertions by contrary evidence or a showing of agency bad faith, in camera review is unnecessary.

**CONCLUSION**

DOS has shown that its search was adequate, that the withheld documents fall within applicable FOIA exemptions, and that it has provided all information that can be reasonably segregated from the exempt information, and the motion for partial summary judgment (Dkt. No. 11) is granted.

So ordered.

```
Dated:  New York, New York
        September 19, 2014
```

                                        _____
                                        LOUIS L. STANTON
                                             U.S.D.J.